IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA BOE, et al.,

      Plaintiffs,                              No. CIV S-10-0181 KJM-CMK

    vs.

CHRISTIAN WORLD ADOPTION, INC., et al.,

      Defendants.                         ORDER

/

        The court heard defendant Christian World Adoption's ("CWA") motion to stay proceedings pending the resolution of a South Carolina state case (ECF 18) on March 2, 2011. Francesca Gianuario appeared for plaintiffs; Michael Tracy and Curtis Bostic appeared for defendant. More than a month following the hearing, plaintiffs filed an ex parte application to continue the trial date and related dates. (ECF 27.) CWA filed its opposition to the ex parte application on April 7, 2011. (ECF 31.) For the following reasons, CWA's motion to stay is GRANTED and plaintiffs' ex parte application is DENIED as moot. (ECF 27.)

I.    PROCEDURAL HISTORY

        Lisa and Frank Boe (the "Boes") entered into a contract with CWA for the adoption of a child in March 2007. (Pls.' Opp'n at 3, ECF 19.) The present motion stems from the fact that there is a suit brought by CWA against the Boes pending in South Carolina state

1

court, while at the same time the instant suit brought by the Boes and their minor son Z.B. (together, "plaintiffs") against CWA and other defendants is proceeding in this court.

      A.      State court proceeding

On October 26, 2009, CWA brought a complaint alleging (1) libel or libel per se; (2) slander; and (3) breach of contract and seeking a declaratory judgment compelling arbitration against the Boes in South Carolina's Charleston County Court of Common Pleas (the "state suit"). (Def.'s Mem. P. & A. in Supp. Mot. to Stay ("Def.'s Mot.") at 1, ECF 18.) The Boes responded to the state suit by moving to dismiss for lack of personal jurisdiction on November 18, 2009; however, the motion was denied and the South Carolina court held that jurisdiction was proper on April 16, 2010. (Pls.' Opp'n at 5; Def.'s Mot. at 1; Bostic Decl., Ex. B, Order at 1-2, ECF 18-3.) After the South Carolina court's assertion of jurisdiction, the Boes filed their answer there, adding their son as a third party plaintiff as well as several third party defendants, and including eleven counterclaims: (1) wrongful adoption; (2) breach of contract; (3) breach of covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) negligent nondisclosure by a fiduciary/constructive fraud; (6) negligence; (7) negligent misrepresentation; (8) negligent infliction of emotional distress; (9) intentional infliction of emotional distress; (10) civil conspiracy; and (11) negligent supervision of a minor. (*See* Bostic Decl., Ex. C, ECF 18-4.) In their answer, the Boes asserted lack of personal jurisdiction as an affirmative defense. (*Id.* ¶ 26.) They are seeking: "1. That the complaint against [them] be dismissed . . . 2. . . . judgment in their favor . . . 3. [] actual damages in an amount according to proof at trial. 4. [] punitive damages in an amount to be determined at trial. 5. [] costs of suit. 6. [] such other and further relief as the Court deems just and proper." (*Id.* at 24.)

/////
/////
/////
/////

2

CWA filed a motion to compel arbitration in the South Carolina court on July 2, 2010, relying on provisions of its contract with the Boes.[1]  Oral argument on the motion took place on November 5, 2010.  (Tracy Decl., Ex. B, ECF 23-3; Def.'s Mot. at 3.)  The South Carolina court granted CWA's motion on January 18, 2011, finding that the Federal Arbitration Act was applicable, ordering "all parties to the litigation [to] submit all causes of action to binding arbitration" and the arbitrator to apply South Carolina law, and staying the state proceeding pending the conclusion of the arbitration.  (Tracy Decl., Ex. B.)

        B.       Federal court proceeding

Plaintiffs initiated the present lawsuit on January 22, 2010.  (Compl., ECF 1.)  Plaintiffs allege twelve causes of action: (1) wrongful adoption; (2) breach of contract; (3) breach of covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) negligent nondisclosure by a fiduciary/constructive fraud; (6) negligence; (7) negligent misrepresentation; (8) fraud/intentional misrepresentation; (9) negligent infliction of emotional distress; (10) intentional infliction of emotional distress; (11) civil conspiracy; and (12) negligent supervision of a minor.  (*See id.*)  They seek: "1. Judgment in [their] favor . . . . 2. [] compensation in an amount according to proof at trial. 3. [] punitive damages in an amount to be determined at trial. 4. [] attorneys' fees . . . . 5. [] costs of suit. 6. [] such other and further relief as the Court deems just and proper."  (*Id.* at 18.)  Defendants filed an answer to the complaint on February 25, 2010.  (ECF 8.)

CWA filed the present motion to stay on November 30, 2010.  (ECF 18.)  Plaintiffs filed their opposition on December 30, 2010.  (ECF 19.)  CWA filed its reply on February 22, 2011.  (ECF 23.)  Plaintiffs filed their ex parte application to continue the trial date

---

[1] The contract states, at the top of the first page, "'**PURSUANT TO THE CODE OF SOUTH CAROLINA 15-48-10, THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION,**'" and goes on to state "'any controversy between the Adoption Agency and the Adoptive Parent . . . will be resolved subject to binding arbitration by submitting the question to the Christian Conciliation Services who shall apply the law of the State of South Carolina.'"  (Bostic Decl., Ex. A, ECF 18-2 at 7, 12.)

3

1   and related dates on April 5, 2011. (ECF 27.) CWA filed its opposition to the ex parte

2   application on April 7, 2011. (ECF 31.)

3   II.     ANALYSIS - MOTION TO STAY

4          A.      *Colorado River* Abstention Doctrine

5                  i.      Standard

6          The standard applicable to determining the pending motion to stay is found in

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), which declares that federal courts have a "virtually unflagging obligation [] to exercise the jurisdiction given them."[2] "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Id.* at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). In deciding whether a stay is appropriate in the face of a parallel proceeding, courts must consider "'[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). However, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of

/////

---

[2] Plaintiffs' argument that their choice of forum is controlling is not based on a *Colorado River* analysis. They argue that they are the "natural Plaintiff" because CWA's South Carolina action is declaratory and as such their choice of forum is controlling because of the law of forum non conveniens. (Pls.' Opp'n at 6.) Plaintiffs' argument is wholly without merit. Regardless of whether or not CWA's state court action is a declaratory action, the issue here, as will be discussed in detail, is whether exceptional circumstances exist to support a decision to abstain in accordance with *Colorado River*. Even the cases cited by plaintiffs discuss the propriety of abstention where exceptional circumstances exist. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947) (holding courts have "the power to decline jurisdiction in exceptional circumstances"); *see also BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995) ("While the circuits are split on whether the *Colorado River* . . . exceptional circumstances test applies to declaratory judgment cases . . . we have decided that only in exceptional circumstances should a district court stay or dismiss a declaratory judgment action subject to parallel state litigation . . .").

4

1 wise judicial administration are considerably more limited than the circumstances appropriate for
2 abstention." *Id*. at 818.

3 The court's "task is to ascertain whether there exist 'exceptional' circumstances,
4 the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of
5 [federal] jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1,
6 25-26 (1983). Factors to be considered in performing this task include: "(1) whether either court
7 has assumed jurisdiction over a *res*;[3] (2) the relative convenience of the forums; (3) the
8 desirability of avoiding piecemeal litigation; [] (4) the order in which the forums obtained
9 jurisdiction[;] (5) whether state or federal law controls; and (6) whether the state proceeding is
10 adequate to protect the parties' rights." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir.
11 1989) (internal citations omitted). Other factors include the prevention of forum shopping and
12 the substantial similarity of the two proceedings.[4] *Travelers Indem. Co. v. Madonna*, 914 F.2d
13 1364, 1368, 1372 (9th Cir. 1990). "[T]he decision whether to dismiss a federal action because of
14 parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing
15 of the important factors as they apply in a given case, with the balance heavily weighted in favor
16 of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from
17 case to case, depending on the particular setting of the case." *Cone*, 460 U.S. at 16. "Any doubt
18 as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers*
19 *Indem.*, 914 F.2d at 1369.
20 /////
21 /////
22 /////

---

[3] As the present case does not involve property, this factor is not applicable here and will not be analyzed.

[4] Both parties also discuss the availability of removal as a factor in the analysis; however, the Ninth Circuit has held "[w]hether a party could remove a case to federal court is irrelevant to the abstention analysis." *Nakash*, 882 F.2d at 1415 n.7.

5

ii. Analysis

a. Relative convenience of forums

Although plaintiffs' witnesses will include "Z.B.'s doctors, therapists, home study evaluators, and the Boes, who are all in California" (Pls.' Opp'n at 11), if this case proceeds to trial, witnesses anticipated at this time will come from all over the country and the world. (*See* Def.'s Mot. at 4.) In addition to individuals residing in California, plaintiffs' proffered witnesses include residents of Alabama, Colorado, Montana, Washington, Texas, Michigan, North Carolina, Virginia, Washington, D.C., Pennsylvania and South Carolina, as well as twenty-nine witnesses residing outside of the United States in Ethiopia and Australia. (Bostic Decl. ¶ 4.) Moreover, twenty-nine of plaintiffs' witnesses "are current or former CWA employees; fourteen live in close proximity to the CWA offices in North and South Carolina. It is not contested that more of the witnesses live in close proximity to the CWA offices than to any other geographic location in the United States." (*Id*. ¶ 5.) At this point, plaintiffs continue to be defendants in the state court action, meaning they are subject to appearances in South Carolina if and when that court's stay is lifted, regardless of this court's decision. Although plaintiffs contend the California forum is more convenient due to Z.B.'s health concerns (*see* Pls.' Opp'n at 10), the South Carolina court addressed these concerns in the order denying the Boes' motion to dismiss: "The Court is sensitive to the medical needs of Defendants' son. . . . If his testimony is required, arrangements can easily be made for him to testify by videotape deposition or by teleconference." (Bostic Decl., Ex. B at 10 n.3.) In any event, as of this writing, Z.B. remains a third party plaintiff in the state proceeding.

Although these facts tend to support a stay, given that there is no finalized list of witnesses before the court who would be called if this case proceeded to trial, the court assigns this factor a neutral weight, neither favoring nor disfavoring a stay.

/////

/////

6

b.     Desirability of avoiding piecemeal litigation

"'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Travelers Indem.*, 914 F.2d at 1369 (quoting *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). In *Travelers Indemnity*, the Ninth Circuit found that the desirability of avoiding piecemeal litigation did not weigh in favor of the federal court stay since there was no "federal legislation evincing a federal policy to avoid piecemeal litigation [or] 'vastly more comprehensive' state action that can adjudicate the rights of many parties or the disposition of much property." *Travelers Indem.,* 914 F.2d at 1369. Furthermore, in *Travelers*, "the state court had made no rulings whatsoever." *Id*. Unlike in *Travelers*, here there is "certainty that duplicative effort would result" if the present case is not stayed. *Id*. The South Carolina court has already compelled arbitration, and CWA has indicated it will seek a court order compelling arbitration in this court if the action proceeds. (*See* Def.'s Mot. at 8.) Furthermore, the South Carolina court has determined that South Carolina law controls all causes of action in that case, and twice has dismissed the Boes's objections to personal jurisdiction. (*See* Bostic Decl., Ex. B; *see also* Tracy Decl., Ex. B.) If this court exercises jurisdiction, it will be called upon to decide these same matters anew, "requiring duplicative effort" and creating a possibility if not "a strong possibility of inconsistent results." *American Int'l Underwriters*, 843 F.2d at 1258.

Plaintiffs maintain, however, that "granting the stay would encourage piecemeal litigation," arguing that they have added parties to the state court action that are not parties to the contract; therefore, "under the principles of res judicata, parties not privy to that contract would have a right to bring their case elsewhere." (Pls.' Opp'n at 12.) Plaintiffs contend that this ability to bring the case elsewhere raises "a substantial doubt as to whether the state proceedings will resolve the federal action." (*Id*.) Plaintiffs rely in part on *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908 (9th Cir. 1993), in which the Ninth Circuit overturned the district court's stay in an action involving the state and federal courts' concurrent review of an

7

1    arbitration award.  *Intel* involved "the possibility that [an arbitration] award [would] be reversed

2    through the state appellate review process [that was] sufficient to raise a substantial doubt as to

3    whether the state proceedings [would] end the litigation."  *Id*. at 913 n.5.  The Ninth Circuit

4    found it compelling that certain claims were "subject to exclusive federal jurisdiction" and the

5    "federal court action was initiated prior to the state court proceedings."  *Id*. at 913 n.7, 914.  In

6    contrast to the situation in *Intel*, this court is not being asked to examine the results of a

7    completed arbitration; rather, this court is being asked to try a case that has entered into

8    arbitration elsewhere.  *Intel* is therefore not a bar to the court's decision to stay this case.

9            Significantly, there is no "substantial doubt" here as to whether the state

10   proceedings will resolve the claims pending in this federal action.  "A contract may bind non-

11   parties such as an intended third party beneficiary . . . [b]ut generally arbitration clauses and

12   contracts do not bind non-parties in the absence of such extraordinary relationships."  *Comedy*

13   *Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009).  "[N]onsignatories of

14   arbitration agreements may be bound by the agreement under ordinary contract and agency

15   principles. Among these principles are 1) incorporation by reference; 2) assumption; 3) agency;

16   4) veil-piercing/alter ego; and 5) estoppel.  In addition, nonsignatories can enforce arbitration

17   agreements as third party beneficiaries."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir.

18   2006) (internal quotations omitted).  Z.B. is, as the Boes admitted, "a third party beneficiary to

19   [the contract]" (Compl. ¶ 69); in fact, Z.B., as a plaintiff in the federal court suit, is suing under

20   the CWA contract.  As such, "[e]quitable estoppel precludes [him] from claiming the benefits of

21   [the] contract while simultaneously attempting to avoid the burdens that contract imposes."  *Id*.

22   (internal quotation omitted).[5]

23

---

24   [5] At the March 2, 2011 hearing, plaintiffs confirmed that Z.B. is a third party beneficiary
     to the contract, but argued that the cause of action for negligent supervision of a minor does not
25   fall within the provisions of the contract.  As CWA responded at the hearing, however, this claim
     has been submitted to arbitration.  In addition, plaintiffs voluntarily raised this claim as a
26   counterclaim in the state action.

The court finds that the interest in avoiding piecemeal litigation weighs greatly in favor of a stay.

      c.  Order in which forums obtained jurisdiction

"'Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Travelers Indem.*, 914 F.2d at 1370 (quoting *Cone*, 460 U.S. at 21). Here, the state suit was filed first and has progressed further, with the South Carolina court having already compelled arbitration.

Plaintiffs maintain that this court obtained jurisdiction in this matter before the South Carolina court, because the South Carolina court did not deny their motion to dismiss for lack of personal jurisdiction until April 2010. (Pls.' Opp'n at 13.) Plaintiffs also note they continue to object to the jurisdiction of the South Carolina court in their answer to CWA's complaint. (*See* Bostic Decl, Ex. C, ECF 18-4.)[6] Plaintiffs provide no authority for their contention that the South Carolina court did not obtain jurisdiction until it denied the Boes's motion to dismiss, and the court is aware of none. The Ninth Circuit has held that "a party has consented to personal jurisdiction when the party took some kind of affirmative act--accepting a forum selection clause, submitting a claim, filing an action--that fairly invited the court to resolve the dispute between the parties. By contrast, where a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction." *Securities and Exchange Comm. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Here, plaintiffs signed a contract identifying South Carolina law as the applicable law and containing an arbitration provision based on South Carolina law. Even after the South Carolina court denied their motion to dismiss, they continued to litigate in opposition to the motion to compel arbitration in South Carolina without seeking a stay or transfer. Given this

---

[6] By this reasoning, the court still has not obtained jurisdiction in this matter, as CWA contests this court's jurisdiction. (*See* Answer ¶ 1, ECF 8; *see also* Joint Status Report at 4-5, ECF 15.)

factor's focus on the order in which the complaints were filed and the relative amount of progress made in the parallel actions (*see Travelers Indem.*, 914 F.2d at 1370), these facts weigh heavily in favor of a stay of this action.

          d.        Controlling law

As noted, the contract signed by the Boes and CWA contains an arbitration and choice of law clause identifying South Carolina law.

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985). Plaintiffs have not provided any "compelling considerations" for "disfavoring [the arbitration agreement]." *Mitsubishi Motors*, 473 U.S. at 627. "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" *Mitsubishi Motors*, 473 U.S. at 626 (quoting *Cone*, 460 U.S. at 24-25). Here, the applicable contractual provisions expressly identify South Carolina law as controlling.

While plaintiffs contend that California law governs in this proceeding (Pls.' Opp'n at 13), without referencing any authority, they merely assert that they have "chosen federal court in California because California laws govern adoptee rights and adoptive parent standards." (*Id.*) Moreover, they raise only generalized state law claims, none of which are specifically based on California law.

Furthermore, as only state law claims are pled, there are no federal law issues that weigh against surrender of jurisdiction. *See Cone*, 460 U.S. at 26.

Plaintiffs assert that even if the Boes are bound by the choice of law clause in the contract, Z.B. and the other named defendants in the federal case have not expressly agreed to this clause. (*Id.* at 8.) As noted above, as a third party beneficiary, Z.B. may be held to the terms of the contract with CWA. *Comedy Club*, 553 F.3d at 1287; *Comer*, 436 F.3d at 1102.

/////

/////

There is no indication that the other defendants to the federal case themselves object to being bound by this clause.

This factor also weighs heavily in favor of a stay.

e.   Adequacy of state proceeding

"This factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights," *Travelers Indem.*, 914 F.2d at 1370, and "'is more important when it weighs in favor of federal jurisdiction.'" *Id.* (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986)).  As noted, this case does not advance any federal claims.  Plaintiffs assert generally that this court is better suited to hear this case because "of [its] specialized knowledge . . . concerning issues related to International Adoption law that are involved in this case."  (Pls.' Opp'n at 3.)  Even if international adoption law were implicated by this case, which it is not,[7] plaintiffs provide no compelling arguments explaining the state arbitration tribunal's incompetency to hear such claims.  There is no apparent reason for that tribunal's being found inadequate to hear the state law claims that are proceeding.

Furthermore, "[t]he mere fact that the [state] court has stayed its action temporarily does not make the state court proceeding inadequate." *American Int'l Underwriters*, 843 F.2d at 1259.  The fact that the South Carolina proceeding is stayed pending final arbitration is not dispositive.

This factor also weighs in favor of a stay.

/////

---

[7] Plaintiffs only reference international laws in their state court crossclaims and federal complaint in saying that CWA held itself out as comporting with such laws, but do not include causes of action based on international law.  (*See* Bostic Decl., Ex. C, Answer ¶¶ 45, 46, 81, 106; *cf.* Compl. ¶¶ 18, 19, 55.)  *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1091 (9th Cir. 2009) ("a general invocation of international law" did not support federal court jurisdiction where the court was called on to determine whether "an act of state" was involved).

f.     Forum shopping

"In the *Colorado River* context, [the Ninth] Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem.*, 914 F.2d at 1371.

Plaintiffs argue that staying this case "will potentially take away the plaintiffs' right to a jury . . . and would force Plaintiffs to adjudicate in a forum with an entirely different set of laws under different standards of evidence." (Pls.' Opp'n at 12.)  This argument sounds of forum shopping, born of an apparent desire to avoid arbitration and the South Carolina forum. *Cf. American Int'l Underwriters*, 843 F.2d at 1256 (plaintiff was admittedly forum shopping for more beneficial rules of evidence).  Plaintiffs' moving in the South Carolina court to dismiss their counterclaims, after the March bench hearing in this matter and in anticipation of this court's issuance of the present order, further smacks of forum shopping.  (*See* Ex Parte App. at 5, ECF 27.)

This factor too weighs in favor of granting the stay.

g.     Substantial similarity

Plaintiffs contend that the state suit is not "a parallel suit" because it did not include all the parties in the present suit and CWA requested only declaratory relief.  (Pls.' Opp'n at 2.)  However, "exact parallelism . . . is not required.  It is enough if the two proceedings are 'substantially similar.'"  *Nakash*, 882 F.2d at 1416 (citing *Interstate Material Corp. v. Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)).  Proceedings are "substantially similar when 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'"  *Sabbag v. Cinnamon*, 2010 U.S. Dist. LEXIS 131086, *14 (N.D. Cal. Dec. 10, 2010) (quoting *Travelers Cas. and Sur. Co. of Am. v. Comerica Bank*, 2009 WL 2136922, at *3 (E.D. Cal. July 15, 2009) (quoting *Interstate Material Corp.*, 847 F.2d at 1288)).  Thus, "application of the Colorado River doctrine does not require an exact duplication of the parties

involved or the claims asserted." *Id*. at 15.

The present proceeding is substantially similar to the state court proceeding. With regard to the parties, the present complaint does raise claims against three parties not involved in the state court proceedings: Christian World Foundation, Inc.; Christian World Adoption, Ethiopia; and Tracy Froidcoeur.[8]  However, it is clear from the complaint that these parties are related to the parties named in the state action: Christian World Foundation, Inc. is alleged to be a South Carolina corporation sharing a CEO and Chief Financial Officer/ Secretary/Treasurer with CWA; Christian World Adoption, Ethiopia is alleged to be "an unincorporated division of [CWA]"; and Tracy Froidcoeur is alleged to be the Director of Christian World Adoption, Ethiopia.  (Compl. ¶¶ 3-6.)[9]  In addition, Z.B. is a plaintiff in the present proceeding and a third party plaintiff in the state court proceedings.  Moreover, while the present complaint includes one cause of action not raised in the state court counterclaim -- Fraud/Intentional Misrepresentation -- this claim could have been raised in the South Carolina court; in fact, many of the facts alleged by the Boes in their answer to CWA's complaint include

---

[8] The complaint also names fifty doe defendants; however, plaintiffs only address the identities of Does 1-10, stating: "Plaintiffs are informed and believe, and on that basis allege, that each of these fictitiously names [sic] defendants is responsible in some manner for the acts or omissions alleged in this Complaint and that Plaintiffs' injuries were proximately caused by the acts or omissions of these defendants. Plaintiffs are unable to name these defendants as documents relating to the adoption have not yet been obtained from Ethiopia." (Compl. ¶ 9.) The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Such defendants should be dismissed, however, where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id*. (quoting *Gillespie*, 629 F.2d at 642).  Under the circumstances of the present case, where the complaint was filed over one year ago, plaintiffs have had ample opportunities to identify these doe defendants and have not.  Therefore, any potential doe defendants are irrelevant to the court's present analysis.

[9] Plaintiffs admit in their complaint that "at all times herein mentioned, each of the defendants was the agent and/or employee of each of the remaining defendants and, in doing things hereinafter alleged, was acting in the course and scope of such agency and/or employment." (Compl. ¶ 10.)

13

allegations of fraudulent misrepresentation. (*See* Bostic Decl., Ex. C.) While the Second Circuit has found that a stay was inappropriate where the plaintiff's federal suit raised a claim not raised in the state suit, *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986), the Ninth Circuit does not abide by such a standard. Rather, as already stated, the Ninth Circuit explicitly holds that "exact parallelism . . . is not required." *Nakash*, 882 F.2d at 1416 (mentioning and not agreeing with the plaintiff's argument based on *Bethlehem Contracting*, 800 F.2d at 328).

Thus, this factor also weighs in favor of a stay.

h. Conclusion

This case presents exceptional circumstances and the clearest of justifications for abstention. The following six factors weigh in favor of granting a *Colorado River* stay in this case: avoiding piecemeal litigation, the order in which a forum obtained jurisdiction, the controlling law, adequacy of state proceedings, forum shopping and substantial similarity. "[T]he parallel state proceeding will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (internal quotation omitted)).

III. EX PARTE APPLICATION

Plaintiffs' recent application is a transparent attempt to defeat defendants' motion to stay by dismissing their state counterclaims and trying to force the court's hand to effect a change in forum. (*See* Ex Parte App. at 8 ("Given the fact that plaintiffs are moving to dismiss all of their claims in South Carolina, it is more likely the Court will rule against Defendants on the Motion to Stay . . . .").) As of the filing of this order, the South Carolina court has not decided plaintiffs' motion, and therefore the state counterclaims have not been dismissed. The court's analysis of the factors relevant to a motion to stay set forth above is not affected. Moreover, plaintiffs have not shown good cause for the court's revisiting the schedule previously

1  set for this case on an expedited basis without the opportunity for a full airing of positions of all
2  parties.  The application will be denied.
3  IV.     CONCLUSION
4          For the foregoing reasons, CWA's motion to stay proceedings in the instant case
5  is GRANTED and plaintiffs' ex parte application is DENIED.  This case is STAYED pending
6  resolution of the parallel state proceeding.
7          IT IS SO ORDERED.
8  DATED:  April 21, 2011.

_____
UNITED STATES DISTRICT JUDGE